**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                                                  Case No.:   3:17-cr-210-BJD-JBT

STANLEY HAGAN, JR.

_____/

## ORDER

This case is before the Court on Defendant Stanley Hagan, Jr.'s Sealed Motion for Compassionate Release (Doc. 50 (Motion); Doc. 50-1 through 50-16 (Movant's Exhibits)), which he filed through counsel. The United States has responded in opposition. (Doc. 52, Response).

Hagan is a 36-year-old inmate incarcerated at Jesup FCI, approaching the end of a 60-month prison sentence for one count of receiving child pornography. (See Doc. 33, Judgment). According to the Bureau of Prisons (BOP), he is scheduled to be released from prison fewer than 17 months from now, on September 1, 2022. Hagan seeks early release under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), because of the Covid-19 pandemic and because he suffers from various health problems. Among Hagan's underlying conditions are Type 2 diabetes, morbid obesity, hypertension, and asthma. The United States concedes that Hagan has "extraordinary and compelling reasons" for compassionate release, but opposes the Motion because it argues that

1

Hagan's conditions do not prevent him from providing self-care, because the BOP is adequately responding to Covid-19, and because the sentencing factors under 18 U.S.C. § 3553(a) do not support a reduction in sentence. See Response.

The Court has carefully considered each of the parties' arguments and exhibits, including Hagan's medical records and letters from him and his family. The Court also requested that the Probation Office investigate the suitability of Hagan's release plan, which is to reside either with extended family in Statesboro, Georgia, or in transitional housing. The Probation Office has completed its investigation. For the reasons below, the Motion is due to be granted.

## I.     Compassionate Release

Ordinarily, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). However, as amended by the First Step Act, section 3582(c)(1)(A) provides:

> **(A)**   the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> **(i)** extraordinary and compelling reasons warrant such a reduction …
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Pursuant to its authority under § 3582(c), the United States Sentencing Commission has promulgated a policy statement governing the circumstances when compassionate release is appropriate. See U.S.S.G. § 1B1.13. The policy statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> **(1)** **(A)** Extraordinary and compelling reasons warrant the reduction; or
> **(B)** The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> **(2)** The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> **(3)** The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. The Sentencing Commission has not updated the policy statement since the passage of the First Step Act.

The guideline's commentary provides that "extraordinary and compelling reasons" for compassionate release may exist based on the defendant's medical

3

condition, age, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. 1. As relevant here, these circumstances include:

> **(A) Medical Condition of the Defendant.—**
>
> **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> **(ii)** The defendant is--
>
> **(I)** suffering from a serious physical or medical condition,
>
> **(II)** suffering from a serious functional or cognitive impairment,
>
> or
>
> **(III)** experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Id., cmt. 1(A).[1]

---

[1] The Court recognizes that several circuit courts have concluded that U.S.S.G. § 1B1.13 does not apply to defendant-initiated motions for compassionate release, and therefore does not bind district courts. United States v. Brooker, 976 F.3d 228 (2d Cir. 2020); United States v. McCoy, 981 F.3d 271 (4th Cir. 2020); United States v. Shkambi, No. 20–40543, 2021 WL 1291609 (5th Cir. Apr. 7, 2021) (published); United States v. Jones, 980 F.3d 1098 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178 (7th Cir. 2020); United States v. Aruda, No. 20–10245, 2021 WL 1307884 (9th Cir. Apr. 8, 2021) (published); United States v. McGee, No. 20–5047, 2021 WL 1168980 (10th Cir. Mar. 29, 2021) (published). The Eleventh Circuit Court of Appeals has not yet ruled on this issue, though the matter is pending in several cases. The Court need not resolve that issue here. For purposes of this Order, the Court assumes that the policy statement is still binding. If it is not binding, such that the Court has greater flexibility to act, its decision would be the same.

When a defendant moves for compassionate release on his own behalf, the compassionate release statute contains an exhaustion requirement. A district court can reduce the term of imprisonment "upon motion of the defendant" only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A) (emphasis added). As the Sixth Circuit Court of Appeals has held, "[p]risoners who seek compassionate release have the option to take their claim to federal court within 30 days [of submitting a request to the warden], no matter the appeals available to them." United States v. Alam, 960 F.3d 831, 834 (6th Cir. 2020); accord United States v. Smith, 482 F. Supp. 3d 1218, 1222–24 (M.D. Fla. 2020).

## II. Hagan has satisfied the exhaustion requirement

The United States concedes that Hagan has satisfied the exhaustion requirement, Response at 3–4, and the Court agrees. Hagan submitted requests for compassionate release to the warden of his facility on September 23, 2020 and again on October 9, 2020. The warden denied both requests in a pair of one-page responses. (Doc. 50-7, Movant's Exhibit 7 at 3, 7). On March 3, 2021, more than 30 days after submitting each of his requests, Hagan filed the motion for compassionate release. As such, Hagan has satisfied § 3582(c)(1)(A)'s 30-day exhaustion alternative.

### III.  Hagan has shown extraordinary and compelling reasons

The United States also concedes that one of Hagan's medical conditions qualifies as an "extraordinary and compelling" reason for compassionate release in light of the Covid-19 pandemic. Response at 4, 8. The United States agrees that, pursuant to Department of Justice (DOJ) policy, Hagan's Type 2 diabetes is a "serious medical condition" under U.S.S.G. § 1B1.13, cmt. 1 because the condition is a confirmed risk factor for serious illness from Covid-19, the condition is supported by medical records, and Hagan is not expected to recover from it.

Type 2 diabetes is indeed a risk factor for serious illness from Covid-19. According to recent guidance from the Centers for Disease Control (CDC), having Type 2 diabetes can increase a person's risk of serious illness if he or she contracts coronavirus.[2] "Serious illness" is defined as a Covid-19 infection that

---

[2]  Previous guidance from the CDC regarding underlying conditions and the risk of severe illness from Covid-19 separated underlying conditions into two categories: those that "might" increase the risk of severe illness and those that do increase the risk of severe illness. On March 29, 2021, the CDC issued updated guidance, which no longer draws a clear distinction between those two categories. Instead, the CDC states that nearly all the conditions on its list "can make [one] more likely" to develop severe illness.

However, the CDC lists the conditions associated with severe illness from Covid-19 by "tiers," depending on the quality of evidence supporting an association with serious infection. https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlying-evidence-table.html. Those tiers range from "supported by meta-analysis/systematic review" at the top (a tier that includes conditions like cancer, COPD, diabetes, and obesity) down to "supported by mixed evidence" at the bottom (a tier that includes conditions like hypertension and asthma). These tiers roughly correspond to the former distinction between conditions that increase the risk of severe illness (which, like the top tier, included cancer, COPD, diabetes, and obesity) and those that "might" increase the risk of severe illness (which included hypertension and moderate-to-severe asthma).

6

leads to hospitalization, intensive care, ventilation, or death. The CDC reports that the association between Type 2 diabetes and severe illness from Covid-19 is supported by the strongest level of evidence, that is, meta-analysis and/or systematic review.[3] According to a letter that Hagan submitted from Marcia Glass, M.D. (associate professor of internal medicine at Tulane University) and Natasha Lee, M.D., (chief resident of the internal medicine-pediatrics residency program at Tulane University), the American Heart Association has published "multiple studies that indicate that living with diabetes can increase the risk of death due to a COVID-19 infection by twelve-fold." (Doc. 50-5, Movant's Exhibit 5 at 4). Dr. Glass and Dr. Lee conclude that "Mr. Hagan's diabetes puts him at both increased risk of death from COVID-19 and complicates his treatment if he was to contract the virus." Id.

Were diabetes the only condition affecting Hagan, the Court might not grant compassionate release. But such is not the case. According to Hagan's medical records, he also has been diagnosed with hypertension, asthma, and notably, morbid obesity. (Doc. 50-6, Movant's Exhibit 6 at 10–11). The CDC states that each of these conditions can increase the risk of severe illness from Covid-19. Moreover, having multiple underlying conditions cumulatively aggravates the risk of developing a serious infection. COVID-19: Who's at

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlying-evidence-table.html.

7

higher risk of serious symptoms?, Mayo Clinic (April 6, 2021), https://www.mayoclinic.org/coronavirus-who-is-at-risk/art-20483301 ("While each of these factors can increase the risk of severe COVID-19 symptoms, people who have several of these other health problems are at even higher risk."). Although according to the CDC there is only mixed evidence whether hypertension and asthma increase the risk of serious infection from Covid-19, the strongest level of evidence supports an association between obesity and severe illness. Not only that, but the CDC warns that "[t]he risk of severe COVID-19 illness increases sharply with elevated BMI [Body Mass Index]." People With Certain Medical Conditions, CDC (March 29, 2021) (emphasis added).

Hagan suffers from a BMI of nearly 50. For perspective, a BMI of 30 or greater but less than 35 qualifies as Class 1 obesity.[4] A BMI of 35 or greater but less than 40 qualifies as Class 2 obesity. And a BMI of 40 or greater qualifies as Class 3 obesity, which is also "sometimes categorized as 'extreme' or 'severe' obesity." Id. Hagan's BMI is well above the threshold for severe obesity. His current records reflect a BMI of 49.5, Movant's Ex. 5 at 3, but records also reflect that his BMI has ranged as high as 52.9 and 56.1. (Doc. 52-1, Gov't Medical Records at 15, 29, 43–44). There appear to be at least three reasons why obesity increases the risk of serious illness from Covid-19: (1) obesity causes fat in the

---

[4]   https://www.cdc.gov/obesity/adult/defining.html.

8

abdomen to press on the diaphragm, which can restrict airflow to the lungs, resulting in further shortness of breath and difficulty breathing, (2) "[t]he blood of people with obesity also tends to clot more, specifically in the lungs," and (3) "[o]verall, the immune systems in people with obesity are not as strong."[5] Dr. Glass and Dr. Lee report:

> According to the American Heart Association, patients with severe obesity had more than double the risk of requiring intubation and mechanical ventilation and 26% higher risk of death compared to patients with normal BMIs. There was also an age component that was noted in that patients aged 50 years and younger with severe obesity had a 36% higher risk of death compared to their peers with normal BMIs. Mr. Hagan who has a BMI of 49.5 and is 36 years old falls into this severely high-risk category of not just severe COVID-19 infection but also of death. Additionally, a study published by the Diabetes Journal found that the presence of obesity was associated with an approximately threefold increased risk of severe complications resulting from a COVID-19 infection. They found that this association persisted even after controlling for age, sex, smoking status, hypertension, diabetes, and dyslipidemia. This means that regardless of Mr. Hagan's potential comorbidities, his severe obesity alone puts him a incredibly high risk of suffering from a severe and potentially fatal COVID-19 infection.

Movant's Ex. 5 at 3.

The United States argues that obesity is not a basis for compassionate release because it is not an extraordinary condition and because Hagan can recover from it. Response at 9–10. That may be true in most cases, but three things bear mentioning. First, the Court does not consider Hagan's severe

---

[5] https://www.obesityaction.org/community/covid-19-and-obesity-what-does-it-mean-for-you/. See also https://www.cdc.gov/obesity/data/obesity-and-covid-19.html.

9

obesity to be an extraordinary and compelling reason in isolation. Rather, the Court considers it in conjunction with his other comorbidities, including hypertension, asthma, and type 2 diabetes, the last of which the United States concedes is an extraordinary and compelling reason in light of the Covid-19 pandemic. Second, Hagan does not merely suffer from obesity, but a particulary severe form of obesity, with a BMI of nearly 50.[6] And to reiterate what the CDC has said, "[t]he risk of severe COVID-19 illness increases sharply with elevated BMI." Third, given the extent of Hagan's obesity, it is unlikely he could recover from his condition any time soon.

The Court also recognizes, as the United States argues, that Hagan's blood pressure and diabetes appear to be well-managed. That will often be a powerful consideration in deciding whether compassionate release is warranted. See, e.g., United States v. Heck, No. 3:17-cr-224-MMH-MCR, 2021 WL 1172938, at *5–7 (M.D. Fla. Mar. 29, 2021) (finding that defendant's conditions did not rise to the level of extraordinary and compelling circumstances where his diabetes and blood pressure were well-controlled). However, there remains the issue of Hagan's severe obesity, which compounds his risk of severe illness from Covid-19, and which neither he nor the BOP can

---

[6]    The CDC reports that as of 2017-2018, 9% of adults in the United States suffered from severe obesity, meaning a BMI of 40 or greater. https://www.cdc.gov/nchs/data/hestat/obesity-adult-17-18/obesity-adult.htm. It stands to reason that an even smaller percentage of American adults suffers from a BMI of 50 or greater.

do much about in the short term. The Court adds that there is no indication Hagan has been offered the Covid-19 vaccine as a means of coping with his risk of infection. See Response at 2.[7]

The Court agrees with the Third Circuit Court of Appeals that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). But the historic Covid-19 pandemic, when combined with the particular circumstances of an inmate, may present a different picture. Hagan is an outlier due to the uncommon nature and combination of his underlying conditions. Under the unique circumstances here, the Court concludes that Hagan's conditions rank as extraordinary and compelling reasons for compassionate release.

---

[7] According to the BOP's latest data, one inmate is positive for Covid-19 at Jesup FCI, 20 staff members are positive, two inmates have died, 487 inmates have recovered, and three staff members have recovered. https://www.bop.gov/coronavirus/. Although such data is a valuable consideration as well, where a defendant's medical conditions create extraordinary and compelling circumstances, this Court has said it "need not wait for the virus to afflict Defendant before acting." United States v. Mack, No. 3:13-cr-206-TJC-MCR, 2020 WL 6044560, at *5 (M.D. Fla. Oct. 13, 2020).

## IV. Hagan is unlikely to be a danger to the community

The Court considers an additional question: whether Hagan is a danger to the safety of another person or to the community, as provided by 18 U.S.C. § 3142(g). See U.S.S.G. § 1B1.13(2). In doing so, the Court considers such factors as "the nature and circumstances of the offense charged," "the weight of the evidence against the person," the "history and characteristics of the person," including the person's "mental and physical condition," as well as "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

To be sure, Hagan's conviction for receiving child pornography is a serious offense. Hagan admitted that, while posing as a 15-year-old female, he engaged in sexually explicit online conversations with an individual who was revealed to be Darren Dozier.[8] (Doc. 12, Plea Agreement at 18–23). Hagan solicited and received images of child pornography from Dozier, which depicted Dozier sexually abusing a 9-year-old child. Although Dozier produced the images months before Hagan contacted him, see id. at 18–19, Hagan acknowledged that his conduct contributed to the sexual exploitation of children. The Court has given these facts careful consideration in weighing its decision.

---

[8]  Mr. Dozier was sentenced in the United States District Court for the Eastern District of Pennsylvania to a term of 420 months in prison for one count of the transportation of child pornography. Docket No. 2:16-cr-520-MAK-1 (E.D. Pa.).

12

However, three reasons persuade the Court that Hagan is unlikely to pose a danger to another person or to the community if granted compassionate release. First is Hagan's remorse and desire for rehabilitation. Hagan fully accepted responsibility for his actions, has expressed unequivocal remorse, and demonstrates that he understands why his conduct was harmful. (Doc. 50-1, Ex. 1, Letter from Hagan). Hagan appears to be committed to bettering himself, id., and he intends to further his rehabilitation after he is released by continuing psychosexual therapy, see Sealed Motion at 15. Second, Hagan appears to have a suitable release plan and a supportive family (see Doc. 50-2 through 50-4, Exhibits 2 through 4, Letters in Support), both of which will help ensure that Hagan complies with the terms of supervised release and that he continues his rehabilitation. Third, the Court is confident that the conditions of supervised release can limit the risk that Hagan will reoffend. Indeed, Hagan was compliant with the conditions of pretrial release, and the Court has no reason to believe he would not be compliant with the conditions of post-release supervision. Hagan will know that if he violates sex offender registration laws or the conditions of supervised release, he will be subject to reimprisonment. Hagan's computer usage will be severely restricted and monitored, making it unlikely he would commit another child pornography offense. The Court believes that these conditions, along with the deterrent of reimprisonment should Hagan violate these conditions, are adequate to protect the public.

## V. 18 U.S.C. § 3553(a) supports compassionate release

Finally, the Court must consider whether the sentencing factors under 18 U.S.C. § 3553(a) support reducing Hagan's sentence. 18 U.S.C. § 3582(c)(1)(A). In view of all the applicable § 3553(a) factors, the Court concludes that a reduction is warranted.

The Court reiterates that it has considered the nature and circumstances of the offense of conviction. Ordinarily, this factor will carry considerable weight in the § 3553(a) analysis. However, the nature of the conviction is not an absolute bar to relief under § 3582(c)(1)(A) where, as here, other factors weigh strongly in favor of reducing the defendant's sentence. See, e.g., United States v. Feucht, 462 F. Supp. 3d 1339 (S.D. Fla. 2020) (granting compassionate release to a 63-year-old inmate convicted of distributing and possessing child pornography, who had Type 2 diabetes, obesity, hypothyroidism, and hypertension, and who had served over 112 months of a 151-month prison sentence). And, Hagan's offense was somewhat distinguishable from other child pornography offenses. Unlike other such cases, Hagan does not appear to have collected a vast trove of illicit material. Rather, the instant offense involved six images (four received from Darren Dozier and two sent to him), based on a few interactions with Mr. Dozier. (See Doc. 27, Presentence Investigation Report [PSR] at ¶ 16). And unlike many other child pornography cases, Hagan did not receive a guidelines enhancement for material involving sadistic or masochistic

14

conduct. See id. at ¶¶ 26–37. Although there was some psychological evidence presented at the sentencing hearing that Hagan has some predilection to be attracted to children, the facts, combined with Hagan's otherwise non-existent criminal history, reflect that the instant offense was an aberration. This by no means minimizes the seriousness of the crime, but it is relevant to the nature and circumstances of the offense.

Moreover, Hagan has served a significant portion of his 60-month prison sentence. He has been in prison for nearly three years, dating from May 31, 2018, when he was remanded into custody immediately after sentencing. That equates to about 60% of his full term of imprisonment (and roughly 70% of his actual time to be served). According to the BOP, Hagan is due to be released from prison in just under 17 months (on September 1, 2022). Thus, granting compassionate release will not significantly diminish the length of Hagan's sentence, and by extension, minimize the severity of the offense.

Additionally, Hagan has conducted himself well in prison. He has not received any incident reports during his time in custody. (Doc. 50-12, Movant's Exhibit 12). Meanwhile, Hagan has used his time in prison to further his education, having completed courses in paralegal studies, commercial truck driving, and investing. (Doc. 50-9, Movant's Exhibit 9). He has come to lean on his faith and has developed new hobbies to stay out of trouble. See Movant's Ex. 1; Movant's Ex. 2. Hagan has not received therapy while at Jesup FCI because

sex offender treatment programs are not available at the facility. See Motion at 15. However, upon his release from prison, he hopes to continue treatment with the same therapist he saw while on pretrial release. See id. The interest in Hagan receiving sex offender treatment is one factor (among many) that weighs in favor of granting early release. See 18 U.S.C. § 3553(a)(2)(D); Frushour v. United States, No. 16–20226–1, 2020 WL 4734907, at *3 (E.D. Mich. Aug. 14, 2020).

Finally, as discussed under Part IV, the Court is confident that Hagan will not pose a danger to any other person or to the public. At the sentencing hearing, the Court stated that it believed Hagan's "expressed remorse is genuine and that his amenability to treatment is real," both of which the Court found to be "unique about the case." (Doc. 44, Sentencing Transcript at 39). The instant offense marked Hagan's first and only encounter with the criminal justice system. As the Court remarked at sentencing, "Mr. Hagan comes to the court without any previous criminal history at all and with a fairly significant record of contributing to his family's and the community's uplift, if you will." Id. Based on his expressions of remorse and acceptance of responsibility, the Court believes that Hagan is unlikely to reoffend, and that the sentence served thus far has been sufficient to afford adequate deterrence and to promote respect for the law. Hagan understands that, were he to reoffend, he will suffer the consequences. But as the Court optimistically noted at sentencing, "[h]e

16

presents to the Court with factors that cause the Court to believe in his ability to continue not to violate the law after this one egregious and horrible mistake, as he puts it." Id.

Hagan presents the Court with a unique constellation of circumstances – pertaining to his health, the Covid-19 pandemic, and the § 3553(a) factors – which the Court finds to support compassionate release. Having considered each of the applicable § 3553(a) factors, including the history and characteristics of the defendant, the types of sentences available, and the need for the sentence to reflect the seriousness of the offense, provide just punishment, afford adequate deterrence, and promote respect for the law, the Court concludes that a sentence reduction is appropriate.

Accordingly, it is hereby **ORDERED:**

1. Defendant Stanley Hagan, Jr.'s Sealed Motion for Compassionate Release (Doc. 50) is **GRANTED**.

2. Hagan's previously imposed sentence of imprisonment of 60 months is reduced to **TIME SERVED plus 7 days**, for a release date of **April 19, 2021**. If possible, Hagan should be quarantined pending his release.

3. Under 18 U.S.C. § 3582(c)(1)(A), Hagan is ordered to serve a "special term" of supervised release of **17 months** (reflecting the remainder of his term of imprisonment with good-time credits), to be followed by the

17

term of **120 months** of supervised release stated in the Judgment (Doc. 33), for a total term of **137 months** of supervised release.

4. Otherwise, all conditions of supervised release contained in his Judgment (Doc. 33) shall apply.

**DONE AND ORDERED** at Jacksonville, Florida this 12th day of April, 2021.

BRIAN J. DAVIS
United States District Judge

lc 19

Copies:

Counsel of record
Defendant
United States Marshals Service
United States Probation Office
United States Bureau of Prisons
Warden, Jesup FCI